20-2153 Pernix v. Secretary of State May it please the Court, Douglas Patton for the Appellant The Excusable Delay Clause did not give the Government the right to coerce my client to remobilize and work in dangerous Ebola conditions that had not abated at the time it remobilized. The Board committed legal error by ruling that an order from the Government to remobilize was necessary for our constructive change claim to proceed. The Board failed to consider the factual allegations that... Counsel, can you hear me? This is Judge Crose. Can you hear me? Yes, Your Honor. Okay, I just want to get to the heart of it before your time runs out. How do you get around the Excusable Delays Clause, which says time but no money? Under that, why does it matter who decided to shut down work? Could either party have... I mean, I don't understand how you can get around that clause, notwithstanding all of the circumstances in this case, which may not have... you know, one could consider not being able to get through. So, Your Honor, the Excusable Delay Clause does not give the Government the right to force us to go back to work during excusable delay conditions. The Excusable Delay Clause entitles us to obtain additional time, but it does not require us to go back to work while those dangerous epidemic conditions are ongoing. Well, is that one of your challenges here, that the Government forced you to go back to work when it was still dangerous? I didn't get that from your brief. Yes, Your Honor, that's exactly what is the core of our constructive change claim, that it forced us to go back to work during dangerous Ebola conditions. So, exactly how did it force you to go back to work? I understand you're taking the position that you thought you had to, or they might prevent you, not have you continue on. There's some suggestion of that. But, you know, there's no order from the Government here, right? There's no direct order, but the record indicates that on November 24th, the Government wrote my client saying it should make every effort to remobilize the entire workforce and complete the remaining portion of the project as early as possible. On February... What appendix are you relying on specifically for that? 647 is the affidavit... What was it? Appendix 647 states, I and the PSJD felt intense pressure from OBO to remobilize. The contracting officer's November 24th, 2014 letter to me reflects that pressure. Then it goes on to state in another letter dated February 24th, 2015, the contracting officer states, the Government's position remains that before any time... Finally, I've got page 647 in front of me, and it looks like, this is Judge Moore, it looks like a declaration where Mr. Skarns... Skarns, yes. Skarns said he felt pressure. Is that what... Am I missing something? Is that what he says? I felt intense pressure to remobilize. Right, and in paragraph four, he quotes the contracting officer's subsequent letter of February 24th, saying that before any time extension may be granted, PSJD should remobilize its force and provide all data. And it also indicates... But that's just what's required by the contract, right? The requirement of the contract is remobilization prior to a time extension, right? That's not saying get back to work in unsafe conditions, is it? No, there's no contract clause that says the Government cannot review and give additional time before the contractor remobilizes. That's not a requirement of the excusable select clause. I'm looking at appendix 241, which is the letter I think you were referring to. It's your second exhibit, February 24th, 2015. Yes. What's the problem with this letter? I actually have a recollection that you characterized it in ways in your brief that I'm not sure were fair and accurate. So why don't you tell me what the problem is with this letter? The problem with this letter is that on August 6, 2014, the Government wrote to my client and said, We leave the decision for your people to stay or leave for safety reasons solely on your shoulders. That's at appendix 193. Nowhere does it state that if you leave the job, we will consider you abandoning the job. On February 24th, the contracting officer, for the first time, indicates that the decision for us to leave the project to protect our people was an abandonment of the job site. Counsel, this is Judge Moore. Where does he say that? I'm on page 241. Okay. Sure. Page 241. That's where it says your decision to abandon the site was not made in direction, but it doesn't hold you responsible for anything. It didn't charge you with default. Right? That's not what this case is about at all. But it's implying that you left without authority, that you made a decision that was improper. You abandoned the site. It's a highly charged word in contracting, especially government contracting. Counsel, what about the fact that the excusable delays clause says that the contractor will be allowed time, not money, for excusable delays? There's no suggestion here that there wasn't an excusable delay. None of the language of page 241 suggests that. They're just saying that before any time extension is granted, you have to remobilize. Right. And what they're saying is we were asking for a time extension to recognize the fact that we were off the job for five months due to an uncontested delay caused by the Ebola crisis, and that that refusal to even consider a time extension, to even consider it before we returned to the job was additional. The February 24th letter, counsel, simply denies your request for an extension because the request didn't comply with the contractual requirements that you're supposed to submit when you're asking for an extension. That's all I read in that letter, and my understanding of the record is that you did what you were told and you got the extension. We got the extension after we completed the job. We got the extension after we returned to the job site. That's an undisputed fact. Okay. And in addition, our case does not depend solely on the excusable delay clause. It also depends upon the suspension of work clause, which requires the government to give us a suspension of work when there is an unreasonable period of delay due to no fault of either party. The board never even addressed that claim. Judge Moore, is this the constructive suspension of work argument that the board held was waived because it was not timely filed? Yes. They say they had no jurisdiction over it because allegedly the facts were not set forth in the claim. The board made no comparison of our claim to the suspension of work argument. We made it in our brief below. We laid out in detail in our brief before this court, all of the facts that were in the claim that alleged that there was a grounds for granting a suspension of work. The government refused to even consider it, that we were delayed as a result of it and that we were entitled to additional compensation. And the consolidated case says that the government cannot avoid paying a suspension of work by simply refusing to recognize it. And that's what happened in this case. And we were not given. The excusable delay clause would bar any monetary recovery, even if this were timely. How can you get around the language and the excusable delay clause? Because it's not the exclusive clause in the contract dealing with delay. The suspension of work clause is another clause that also deals with delay and provides for the allocation of risk when an unreasonable delay occurred through no fault of the contractor. If in this particular case, there was a two to three week stand down while people got quarantined, while people got vaccinated, and then everybody went to work in two to three weeks, we would be entitled to an extension of time, but we would not be entitled to a suspension of work because it was not for an unreasonable period of time. The suspension of work clause gives us the right to recover for an unreasonable delay. That's not the fault of either party. You just said something that I need to stop you on. It's my understanding that the constructive suspension of work claim requires showing that the government caused the delay. That from Lee Ford case, am I wrong about that? You just said it's nobody's fault, but doesn't a constructive suspension of work claim require that the government caused the delay? No, it doesn't Your Honor. And that was the holding and consolidated molded products, which we cite in our brief, which states the holding in those cases to the fact that where the parties have contracted to allocate the risk of performance interruptions through the medium of a suspension of work clause, the government may not avoid the effect of such allocation by unreasonably refusing to formally declare suspension of work. Despite actual delays of an unreasonable duration stemming from causes, not the fault of either party. That's the law of this circuit. 600 F second at seven, nine, eight. It does not require fault of the government. It's intended to cover exactly this kind of situation. And we were denied the opportunity to even put that case. The problem that I'm having is that what I read, so you can respond why you think I'm wrong. What I'm reading as covering this exact situation is the excusable delay clause F eight one. It speaks to not allowed time, allowed time, but not money. And explicitly site things such as epidemics, which require the delay of work, right? That's correct. And then let me address more directly germane to the question we have before. First of all, it does not allow the government the forces to go back to work when those conditions are still occurring. That clause does not give the right to force us to go remobilize. That's like saying there's a flood out there and we can make you go back and work during the flood. And that's exactly what we allege factually here. We were not given the opportunity to present those facts. It does not give the government the right to go back to forces to go back during the very conditions it says are excusable. And it does not take away our right to be covered for unreasonable delay caused by that, by this epidemic. That's what consolidates council. This is judge stole. I'm just following up on judge. I mean, the suspension of work clause says that it it's, it operates by an act of the contracting officer. Like if the suspension is caused by an act of the contracting officer in the administration of the contract, you're saying we're supposed to assume that the epidemic is caused by an act of the contracting officer in the administration of the contract. No, your honor. It's a clause also states that it also applies when the contracting officer fails to act. It's not just when the contracting officer acts, it's also caused applies when there's a failure to act. It says under subsection B. I see it. I see it. So where's the failure to act here to fail you, to grant an extension of time, the failure to grant us a suspension of work at the time, these Ebola conditions occurred. The failure to say you're right. These are dangerous conditions. No workers will be wanted. All your workers want to leave. There are no hospitals to take care of them. The flight arrangements all being canceled. It's at that exact time that the government should invoke the suspension of work clause. And we actually cited internal government correspondence where they were discussing the fact that the suspension of work clause would be the most proper way to handle it. We started that in our briefs below. And so you're into your rebuttal time. You can continue, but you know, if you'd like to save some time, you might want to let the government get up. Yes, I will save some time. Okay. Mr. Gillingham, please proceed. Good morning, your honor. May it please the court. The board did not misunderstand or take any shortcuts in determining there was simply no basis for this claim as a matter of law. It did so in uncontradicted facts, basically concluding there was no change of any sort. In a nutshell, Furnace's general manager, Mr. Skirmish, acknowledged this in August of 2014. He wrote to his superior, at a minimum, we are contractually covered as epidemics are an excusable delay, but per the contract, excusable delays are granted time extensions, no money. That's the appendix 58. So I understand now that the case is basically migrated from one which primarily concerned whether the contracting officer was required to give direction and whether that was a breach of the implied duty or some other duty that. This is Judge Prost. When you go through the record here, it's, I don't know what word to use to describe it, but through the series of emails, this contractor is there. It's a stressful and horrendous situation. He's seeking guidance from the government, which presumably has other people that work for it that are in the area. And he's just saying, what do I do? Help me out. I mean, I think he must have been afraid that if he left and abandoned the project, you might go after him for default. So he was trying to get your concurrence that it's time to leave and you, your folks absolutely resisted giving him any assurance, any help, any guidance whatsoever. Isn't that, is that just the normal way that the State Department behaves under these circumstances? I will say this, Your Honor. The State Department acted in perfect conformance with the contract. Now there were many, many meetings. The parties met. So what you see in the correspondence is one thing. And basically the correspondence reflects that at every turn, the contracting officer, both Mr. Thomas and Ms. McCormick were saying, submit your documents as required by the contract. This is a fixed price contract. Clause B1 of the contract made clear that at the price that Skirm, that Pernick chose, it would have to perform and cover all labor, all, all costs. Just in the July exchange or the August exchange of emails, this guy seems a little desperate. He doesn't know what to do, how to get his employees out, what the government is going to require or compel him to do. And he says, he's looking for instructions from the government. And your answer is quite clear. It's all up to you. You're, it's all, it says, rest solely on your shoulders. And we're not going to give you any guidance. We're not going to give you any help or any instruction. Am I wrong about how I'm reading the record here? Yes. As a fixed price contract, contracting officers always risk run the risk that if they tell contractors what to do, they will then be accused of having changed the contract because at that point, the contractor is spending its own money. So it's clear that, and basically the, their witnesses acknowledge this, that they left by their own direction. Mr. Thomas was, I think the first one in the record to talk about this. This is the August 6th, 2014 email where he basically says, we're in no position to tell you what to do. In fact, the state department remained on site and he said, I can't tell you what to do. However, I recognize that the safety of your people is most important. So this decision is on your shoulders. That's a correct statement of a contract that Mr. Thomas could not have asked. Sperm needs to spend its own money because on a fixed price contract, it puts out the price and it has to operate within that price. So he can't tell them to take option A or option B because then he'll be accused of having changed the contract. So the correct answer is you decide what you have to do. Now the parties actually met on many occasions. They met in October. They met in September. They met in January. They were constantly meeting. There was lots of back and forth, but basically what they were doing was monitoring the site. Perhaps the culminating meeting was in January of 2015 where there was a trip report and a staff from Pernix went to the site. They met with a representative of the CDC. They met with a representative of the Post. That's the diplomatic people on site and the project people. And there was a discussion of what's happening. At that time, the trip report acknowledges that things are getting better. In an October 8th letter found in appendix 199, Pernix said we'll return when conditions are better. When they finally decided to return on January 2nd at appendix 5130 and 5131, they said there are multiple reasons why we're going back. The trip report itself at 5105 said we want to return as quickly as possible. When they eventually did return, in internal emails, they said basically it works the effect of our return cannot be conditioned on the approval of the State Department. This will interfere with our contractual and financial interests basically. So they recognized that they had to get back as quickly as possible. As a result, the claim that Mr. Patton discussed, which is one when the contracting officer refuses to give additional time, after additional time is properly requested, in a case like that, yes, the contracting officer can be held liable. That's not the claim you see before you. The claim you have before you, or the contracting officer had before her, was one of the carrying costs between August and November. I'm sorry, August and March when Pernix returned. So during that time, for example, the executive staff was still working. I presume Mr. Skirmish was paid, for example, and Mr. Elfwall and the others were being paid, and their salaries are in there. And that's during a time when the job was not being progressed. There was, I think, a security guard or something on staff because of a generator that was being, it was being operated to maintain power at the site. There was some storage costs that were being undertaken. This all was a consequence of Pernix acting on its authority, and its decision to demobilize. And no one is criticizing that decision at all. No one in the State Department criticized that decision. And so these are simply the costs of being on a pause between the time when they finished work in August of 2014 and the time they resumed work again in March 2015. Now, the REA and the claim also includes time for money, requests for money, for added costs. So, for example, some people don't like working under those circumstances. They had to pay them more. They beefed up their medical staff. That medical, the medical and whatever it was, the clinic there, was basically required by the cap, by their own health plans anyway. Of course, when there was a hospital on site, it could have taken its people. There was no need for it to have really much of a facility at all. When an infirmary was not required, they had to have more serious plans. So, this is something under their authority. Counsel, can you hear me? I can, yeah. About the constructive suspension of work claim, just one quick question. I want to know what facts, if any, did Pernix need to prove that were not operative facts relevant to the other legal theories that it raised in its certified claim? So, as Pernix itself has acknowledged, the consolidated, molded product, in this case, required four or five, four or five allegations. Let me just check my notes real fast here. All right. Sorry for the delay. So, the first thing they had to prove was the contractor encountered a delay. Excuse the length of the contract. Well, we now know the, the Pernix now having put in its claim, or its schedule update, in April of 2015, which was acknowledged in May of 2015. Later, in August of 2015, Pernix put in a formal request that the contract be changed, REA-4, and about a month later, in September, that was granted. So, whenever they asked, I'm not following you. That was. Sorry. I'd like to know what specific facts they were, if any, would they have had to have alleged, in order to prove their new suspension of work claim, that maybe they had not pled before. So, do you have specific facts that you can identify for me? Sure. Yes, Your Honor. So, among other things, they would have had to allege that they made a timely and sufficient request for an extension of the contract schedule. As I said, that didn't occur on the scheduling side until April of 2015. They'd already returned. And on the contracting side, until August of 2015, those are uncontroverted facts. The other thing they would have had to allege is, that the government denied the contractor's request, or failed to act within a reasonable time. Again, the schedule request was put in April. A month later, it was granted. The contract change was put in August. And the next month, in September, it was granted. Then, they would have to allege the government insisted on completion of the contract within a period shorter than the period the contractor would be entitled by taking into account the period of excusable delay. So, when all these things took place, because of the May 2014 modification of the contract, the contract deadline was January 15, 2015. Before that modification, it had been, like, November of 2014. You will find no allegations whatsoever, and no documents whatsoever, where the contracting officer ever said, hey, your deadline is January 15, 2015. What you have to do is meet that deadline. And the next thing they would have had to do, and they can't allege that, and they don't allege that. And then, they would have to prove they were required to expend extra resources to compensate for the lost time and remain on schedule. There is no allegation that they ever tried to remain on the schedule that required them to complete on January 15, 2015. They basically proposed the schedule, once they came back in March, to finish by September 30th, I think it was, of 2015. And that was granted. And that's the schedule they worked to. So, the work they did was the work to their schedule, during the time that the excusable delay had been granted. It was not cost associated with working to a schedule, which the contracting officer held them to, i.e., the January 15, 2015 deadline. So, none of those things were alleged. Does that answer your question, Your Honor? Yes. Okay. If there's no further... Hello? Can you hear me? Yes, I can, Your Honor. Given the Court's questions, it doesn't seem like, I mean, you know, they talk about cardinal change. We rely on a brief for that. I think the Court has adequately addressed whether they were under a threat or not, but I'll just say briefly that a lot of the contemporary evidence, which we've cited on brief, identified that they did not believe they were under any threat to return whatsoever. So, among other things, for example, at page 6425 of the appendix, Mr. Spermy testified, we continually got the feeling that OBO was not going to give us direction, but they understood the safety of our people was we had to take care of our people. Mr. El-Fawad, at this page. All right, Mr. Gillingham, you've probably, it's a bit of overkill at the moment. Why don't we let Mr. Patton... I understand. I certainly will. Thank you so much, Ron. Your Honor, Mr. Gillingham did not answer your question. He was referring to case law dealing with constructive acceleration complaints. We're making a suspension of work claim. All the elements that he quoted to you were constructive acceleration elements. We did allege all of the facts necessary for a constructive suspension of work claim. If you look at appendix 416 through 422, we allege all the facts indicating that we had a basis to get a, demobilize the job. We were not given direction from the government. They refused to give us any direction. We allege all the facts indicating that we were delayed by the Ebola outbreak. In fact, the government granted us an extension of time for the Ebola outbreak, which is recited in the decision by the board at page seven. So by the time we got our claim submitted on January 17th, 2017, the government already agreed that we were entitled to 195 days of delay plus the earlier 65 days of delay to obtain a extension of time. So counsel did not answer your question as to what facts didn't we allege that would allow us to obtain a construction, constructive suspension of work claim. In addition, in the record below at page six, eight, three, we quote a government official on August 8th saying the suspension of work is the most appropriate, but also referred to legal weighing in. And then there's an August 11th, 2014 email. The contracting officer should try to negotiate a suspension agreement under which the government accepts part, but not all of the costs. So the facts were there. What we are not saying that the, our constructive change claim is based upon us being forced to be mobilized during dangerous Ebola conditions. That's a disputed factual issue. We allege that the threat that calling us, that we abandoned the job, that we're not going to be allowed any time till we get back to the job. Those are hotly contested, disputed facts, which the board never addressed. And we should be allowed to put that case on. Okay. I thank both counsel for their arguments. This case is taken under submission.